IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.    ALL USDT SEIZED FROM BINANCE ACCOUNT 131539601 HELD IN THE NAME OF JIANG HAIAN;

       Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, ("the United States") by and through Acting United States Attorney Matthew T. Kirsch and Assistant United States Attorney Tonya S. Andrews, pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(2), states:

### JURISDICTION AND VENUE

1.    The United States of America ("the United States") has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(C), seeking forfeiture of the defendant asset as proceeds traceable to one or more violations of 18 U.S.C. § 1343. In addition, the United States has also commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(A), seeking forfeiture of the defendant property involved in violations of 18 U.S.C. §§ 1956 and 1957, or property traceable thereto.

1

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355. Venue is proper 28 U.S.C. § 1395, as the defendant property is located, and the acts described herein occurred in the District of Colorado.

## DEFENDANT PROPERTY

3. Defendant property is more fully described as:

> All USDT seized from Binance account 131539601 Jiang Haian, totaling approximately 699453.159597 USDT ("defendant 699453.159597 USDT"), seized on October 11, 2023, which is currently in the custody of the Federal Bureau of Investigation.

## CRYPTOCURRENCY TERMS

4. Cryptocurrency (also known as digital currency or virtual currency) are digital tokens of value circulated over the Internet as substitutes for traditional fiat currency. Cryptocurrency is not issued by a government or bank like traditional fiat currencies such as the U.S. dollar but are generated and controlled through computer software.

5. Bitcoin ("BTC"), Ethereum ("ETH") or "ether"), Tether ("USDT"), and USD Coin ("USDC") are types of cryptocurrencies. Bitcoin is the most well-known virtual currency in use. Payments made with these cryptocurrencies are recorded in a public ledger that is maintained by peer-to-peer verification (i.e., a "blockchain") and is, thus, not maintained by a single administrator or entity.

6. USDT and USDC are blockchain-based cryptocurrency whose tokens in circulation are backed by an equivalent amount of U.S. dollars, making it what is known as a "stablecoin." Individuals can acquire USDT and USDC through exchanges (i.e.,

online companies which allow individuals to purchase, sell or exchange cryptocurrencies for fiat currencies or other cryptocurrencies), or directly from other addresses which are controlled by an individual/entity.

7. Virtual currency addresses are the particular virtual locations to which such currencies are sent and received. A virtual currency address is analogous to a bank account number and is represented by a string of alphanumeric characters.

8. Each virtual currency address is controlled through the use of a unique corresponding private key, a cryptographic equivalent of a password needed to access the address. Only the holder of an address's private key can authorize a transfer of virtual currency from that address to another address.

9. A virtual currency wallet is a software application that interfaces with the virtual currency's specific blockchain and generates and stores a user's addresses and private keys. A virtual currency wallet also allows users to send and receive virtual currencies. Multiple addresses can be stored in a wallet.

10. Wallets can be hosted (custodial or un-hosted (non-custodial or cold storage/self-custody). A hosted or custodial wallet is a wallet managed by a third party, such as a cryptocurrency exchange. The custodian stores and manages the private keys, keeping funds secure even if a user forgets their password. An un-hosted or non-custodial wallet, also known as cold storage or self-custody wallets, allows the user to maintain a cryptocurrency balance outside of an exchange. A Defi wallet is a type of non-custodial wallet that allows users to interact with decentralized applications and stores cryptocurrency assets. imToken is another example of an un-hosted wallet that

3

manages assets across multiple blockchains. With an un-hosted or non-custodial wallet, losing the private key is synonymous with losing access to the cryptocurrencies.

11.   Many virtual currencies publicly record all of their transactions on a "blockchain." The blockchain is essentially a distributed public ledger, run by a decentralized network, containing an immutable and historical record of every transaction utilizing that blockchain's technology. The blockchain can be updated multiple times per hour and record every virtual currency address that ever received that virtual currency. It also maintains records of every transaction and all the known balances for each virtual currency address. There are different blockchains for different types of virtual currencies.

12.   Although the identity of an address owner is generally anonymous (unless the owner opts to make the information publicly available), analysis of the blockchain can often be used to identify the owner of a particular address. The analysis can also, in some instances, reveal additional addresses controlled by the same individual or entity.

13.   Cryptocurrency exchanges are companies that exchange Bitcoin and other cryptocurrencies, for other currencies, including fiat and maintain a user's private keys. Cryptocurrency exchanges can either be centralized or decentralized. Binance and Tokenlon are examples of exchanges. Binance is the largest centralized exchange in the world, and allows users to deposit, withdraw and exchange cryptocurrencies for other cryptocurrencies or fiat. Tokenlon is a decentralized exchange and payment settlement protocol that provides token-to-token exchange. According to the Department of Treasury, Financial Crimes Enforcement Network ("FinCEN") Guidance issued on March 18, 2013, virtual currency administrators and exchangers, including an

4

individual exchanger operating as a business, are considered money services businesses. Such exchanges are required to register with FinCEN and have proper state licenses (if required under applicable state law).

## FRAUD SCHEME

14. In July 2023, the Denver Division of the FBI received a fraud report from T.V., residing in Centennial, Colorado and began an investigation into a fraudulent investment platform.

15. T.V. reported they had received a wrong number phone call from Mary Davis ("Davis") in February 2023. Davis did not speak English as a first language and requested to move the conversation to Telegram and later WhatsApp to assist with translation. She provided WhatsApp number 978-315-2444. They befriended and discussed personal information such as their respective marital status and children. T.V. stated that they donated to a charitable project to give aid to poor children in Vietnam. Davis offered to raise money with T.V. Davis said she had a friend named Ed, who purportedly ran a California-based cryptocurrency exchange. Ed was said to run a team of analysts at the stock exchange that were able to plan cryptocurrency future trades that resulted in guaranteed profit every time.

16. T.V. was offered an opportunity to join the investment, through a decentralized finance investment platform called Bullish, which promised low risk cryptocurrency investments that guaranteed a high rate of return. T.V. was interested in investing in cryptocurrency to use the profits to support their philanthropic pursuits.

17. On or around February 16, 2022, Davis introduced T.V. to the investment platform known as Bullish. Davis claimed that Bullish offered her substantial returns on

5

investing in cryptocurrency futures contracts and encouraged T.V. to participate and invest with her on the platform. Davis walked T.V. through the process of downloading the Bullish application on their phone and setting up an account. Davis assisted T.V. in downloading the applications for Crypto.com and Crypto.com defi wallet. She also assisted T.V. with linking their bank account to the Crypto.com account.

18. On February 23, 2023, T.V. made their initial investment into Bullish, a transfer of 4,990.00 USDC from T.V.'s Crypto.com account to USDC address 0xc88D2bb9c7f80928e0Dc31732219440b48DD11Ba ("Bullish Address 1").

19. Following the initial investment, T.V. was able to view their fictitious "earnings" from their initial investment on the Bullish platform, which amounted to just over 20% in gains on the investment. Davis promised to match investments into Bullish. This induced T.V. to begin making additional investments from their Crypto.com account.

20. Between February 23, 2023, and April 28, 2023, T.V. conducted nine investment transactions, totaling approximately $949,290 USD from their account at Crypto.com.

21. After T.V.'s nine transfers from Crypto.com to Bullish addresses as described in detail below, Crypto.com closed T.V.'s account due to suspicious activity.

22. Davis then assisted T.V. in opening another exchange account at Kraken.com and an imToken wallet to continue investing. Between May 26, 2023 and June 5, 2023, T.V. conducted an additional two investment transactions, totaling approximately $982,052 USD from their imToken wallet, which was linked to their Kraken.com exchange account.

6

23. In total, from February to June 2023, T.V. transferred approximately $2.1 million from their bank accounts to various cryptocurrency exchanges. They liquidated their 401k, cashed in investment accounts, and borrowed funds from friends and family.

24. In summer of 2023, T.V. received a notification from Bullish that their account was locked for "malicious arbitrage" and fined $1.5 million. If they didn't pay within 2 weeks, the account would be closed and the funds would be turned over to the regulatory authority. T.V. learned that Bullish was a scam website and did not pay the fines. They then reported the fraud to the Denver FBI.

## INVESTIGATION

25. Review of the blockchain and available records indicates that individuals conspiring with Davis subsequently laundered the proceeds of the scheme through cryptocurrency addresses before interacting with international cryptocurrency exchanges.

26. The above-described interaction between T.V. and the perpetrators is known as "Pig Butchering." On December 13, 2022, the Financial Industry Regulatory Authority (FINRA) published an investor insight warning about Pig Butchering; "Named in reference to the practice of fattening a pig before slaughter, these scams often involve fraudsters contacting targets seemingly at random, then gaining trust before ultimately manipulating their targets into phony investment and disappearing with the funds."

27. From February 2023 to June 2023, T.V. invested a total of approximately $2,100,000 through the following transfers:

7

| Transfer 1 | February 23, 2023 | Approximately 4,990.00 USDC to Bullish Address 1 |
|---|---|---|
| Transfer 2 | March 7, 2023 | Approximately 223,900.00 USDC to Bullish Address 1 |
| Transfer 3 | March 13, 2023 | Approximately 199,990.00 USDT to USDT Address 0x1D87Fa88Ac6913C6DC3343b281008b18754F290b ("Bullish Address 2") |
| Transfer 4 | March 15, 2023 | Approximately 67,983.33 USDT to Bullish Address 2 |
| Transfer 5 | April 1, 2023 | Approximately 87,629.42 USDT to Bullish Address 2 |
| Transfer 6 | April 5, 2023 | Approximately 71,900.00 USDT to Bullish Address 2 |
| Transfer 7 | April 13, 2023 | Approximately 149,900.00 USDT to Bullish Address 2 |
| Transfer 8 | April 25, 2023 | Approximately 107,700.00 USDT to Bullish Address 2 |
| Transfer 9 | April 28, 2023 | Approximately 35,208.39 USDT to Bullish Address 2 |
| Transfer 10 | May 31, 2023 | Approximately 360,692.7445 USDT to USDT Address 0x22704A7C460Ae30de20724048b284ca196Cb1a56 ("Bullish Address 3") |

8

| Transfer 11 | June 5, 2023 | Approximately 621,360.5228 USDT to Bullish Address 3 |

28. The illustration below demonstrates the general movement of T.V.'s funds from T.V.'s controlled exchange accounts and imToken wallet to Bullish addresses.



### Seizure

29. As described below, the FBI traced a portion of funds sent by T.V. to the Bullish wallet addresses to Binance account 131539601 held in the name of Jiang Haian (江海安).

30. On November 11, 2023, the FBI executed a seizure warrant for all cryptocurrency and fiat currency in Binance account 131539601 held in the name of Jiang Haian (江海安).

### BLOCKCHAIN ANALYSIS OF T.V'S FUNDS TO DEFENDANT CRYPTOCURRENCY

31. T.V. conducted two transfers on the blockchain from their Kraken.com wallet to their imToken wallet, totaling approximately 360,592.74 USDT: May 26, 2023, for 69,357.5978 USDT, and May 30, 2023, for 291,335.1467 USDT.

32. On May 31, 2023, Victim sent 360,692.74 USDT from their imToken wallet to Bullish Address 3 (Transfer 10 above). On the same day, Bullish Address 3 conducted two transfers: 60,693.00 USDT to an address beginning with 0xAac2d and one minute later sent 300,000.00 USDT to an address beginning with 0x408A8. On June 4, 2023, the address beginning with 0xAac2d sent 400,000.00 USDT to an address beginning with 0x31BBf (Layering Address #1). On the same day, the address beginning with 0x408A8 sent 300,000.00 USDT to Layering Address #1.

33. On June 4, 2023, Layering Address #1 transferred 499,000.00 USDT to an address beginning with 0x8cf32 (Layering Address #2). On the same day, Layering Address #2 sent a total of approximately 499,998.00 USDT to an address beginning with 0xBc266 (Layering Address #3). Minutes later, Layering Address #3 transferred a total of approximately 499,998.00 USDT to an address beginning with 0x45265 (Layering Address #4).

34. On June 5, 2023, Layering Address #4 transferred 400,641.00 USDT to an address beginning with 0x8E719 (Layering Address #5). Minutes later, Layering Address #5 transferred the 400,641.00 USDT to an address beginning with 0x5CEC2 (Layering Address #6). All of T.V's 360,682.74 USDC was part of the above described transfers.

35. Layering Address #6 interacted with Tokenlon.im, a decentralized exchange and payment settlement protocol that allows users to convert from one

cryptocurrency to another. On the same day, June 5, 2024, a total of 200,000.00 USDT was converted to 199,948.1997 DAI. The 199,948.1997 DAI was then deposited into Layering Address #6. On June 6, 2023, Layering Address #6 interacted with Tokenlon.im and converted 424,833.00 DAI to 424,515.8058 USDT and 424,515.8058 USDT was deposited back into Layering Address #6.

36. Later on June 6, 2023, Layering Address #6 sent 500,000.00 USDT to an address beginning with 0x9601c (Layering Address #7). On the same day, Address Layering Address #7 transferred 700,000.00 USDT to an address beginning with 0x030B4 (Layering Address #8).

37. Layering Address #8 did not conduct any transactions until June 9, 2023. On June 9, 2023, Layering Address #8 transferred 700,000.00 USDT to an address beginning with 0x3A8Ef (Layering Address #9). On June 16, 2023, Layering Address #9 transferred 500,010.00 USDT to an address beginning with 0x29047 (Layering Address #10).

38. On the next day, June 17, 2023, Layering Address #10 transferred 500,010.00 USDT to an address beginning with 0x69487, which is held in an account at Binance as illustrated below. The 500,010.00 USDT was deposited into the user's Binance Earn account, which has accumulated approximately 1,192.27 USDT in interest.

39. On July 12, 2023, Binance froze the account.

11

40. As seen in the diagram below, the victim's funds were laundered through several layering addresses and accounts before returning to Jiang Haian's Binance account. The Binance account where the victim funds were deposited represent an account that was used to launder the proceeds of the criminal activity.



41. Binance provided information for the account. The account is held in the name of Jiang Haian, a 36-year-old citizen of the People's Republic of China. The account was opened on April 22, 2021. The first transaction in the account occurred on or about February 13, 2022.

42. Between February 13, 2022 and June 17, 2023, the account received approximately $1,259,877.38 in various cryptocurrencies in approximately 206 transactions. Transactions in the account appear to follow a similar pattern: funds are

12

typically deposited in ETH or USDT, almost immediately sent to the user's Binance Earn account, which is a flexible saving product at Binance where users can earn interest on deposits of cryptocurrency into this account, or converted to USDT and withdrawn from the account.

43. At the time of seizure, Binance account 131539601 held in the name of Jiang Haian (江海安) held 699453.159597 USDT.

44. As set forth above, at least 360,693.00 USDT is derived from USDT directly traceable to T.V.

45. The use of multiple "layering addresses" for the fund deposits, coin swapping services, rapid deposits and withdrawals with a high volume of transactions, and transfer to international exchanges are typical indicators of money laundering activity on the blockchain.

46. In this instance, the Binance account was used to receive funds derived from the Bullish scheme with several levels of transactions between the victim and Binance Account, which appear to lack any ostensible business purpose. The number of hops and unnecessary transfers establishes probable cause to believe that the transfers were meant to obscure the control, ownership, source, and purpose of the funds involved in said transfers.

47. Accordingly, the defendant asset constitutes or was derived from proceeds of wire fraud, and constitute property involved in money laundering transactions, and are therefore forfeitable to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C).

## **VERIFICATION OF DANIEL HEETHER**
## **SPECIAL AGENT, FEDERAL BUREAU OF INVESTIGATION**

I, Special Agent Daniel Heether, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

Daniel Heether
Special Agent - FBI

## FIRST CLAIM FOR RELIEF

48. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

49. By the foregoing and other acts, defendant 699453.159597 USDT constitutes property involved in violation of 18 U.S.C. §§ 1956 and 1957, or property traceable to such property, and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF

50. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

51. By the foregoing and other acts, defendant 699453.159597 USDT constitutes or was derived from proceeds traceable to violations of wire fraud in violation of 18 U.S.C. § 1343, and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant assets in favor of the United States, that the United States be authorized to dispose of the defendant asset in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant asset and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 20th day of August 2024.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney

By: *s/Tonya S. Andrews*
Tonya S. Andrews
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Phone: (303) 454-0100
Email: tonya.andrews@usdoj.gov
*Attorney for the United States*

16